UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MANSON BROWN, JR.,
    Plaintiff,

v.                                       CIVIL ACTION
                                           NO. 12-11687-JLT

JOSEPH PETE, ET AL.,
    Defendants.

## MEMORANDUM AND ORDER

TAURO, D.J.

## BACKGROUND

On September 10, 2012, Manson Brown ("Brown"), a state prisoner at the Souza Baranowski Correctional Center in Shirley, Massachusetts, filed a *pro se* civil rights Complaint against three law enforcement officers: (1) Lt. Joseph Pete of the Department of Correction Fugitive Apprehension Unit in Milford, Massachusetts; (2) Trooper Curtis Cinelli of the Massachusetts State Police Violent Apprehension Unit in Framingham, Massachusetts; and (3) Thomas Brown, the Dekalb County Sheriff located in Decatur, Georgia.

Brown's claims stem from an alleged "staged perp walk" held by Trooper Cinelli and Lt. Pete.[1] Specifically, Brown contends that on January 12, 2010, Trooper Cinelli and Lt. Pete went from Massachusetts to Dekalb County Jail in Georgia in order to bring Brown back to

---

[1] A "perp walk" involves the practice of walking a suspect after an arrest through a public place to create an opportunity for the media to photograph or videotape the defendant in a high-profile case. See United States v. Fastow, 292 F. Supp. 2d 914, 918 n.4 (S.D. Tex. 2003) ("Perp is slang for perpetrator, meaning '[a] person who commits a crime or offense.' Black's Law Dictionary 1161 (7th ed.1999). The 'perp walk' occurs 'when an accused wrongdoer is led away in handcuffs by the police to the courthouse, police station or jail ....' Caldarola v. County of Westchester, 343 F.3d 570, 572 (2d Cir. 2003)").

Massachusetts.[2]  Brown was searched and placed in leg restraints before he left the building; however, he was taken to another section of the building where the Decalb deputy sheriffs were stationed.  During this departure process, Brown claims that a "John Doe" deputy sheriff and Tooper Cinelli pulled out their cell phones and took pictures of themselves with him.  He also alleges that Trooper Cinelli took pictures of him on his cell phone as if Brown was a "prize catch."  Compl. at 2, ¶ 7.

Next, Brown claims that he was escorted through the front door of the jail lobby rather than being escorted via the sally port (a secured entryway), which was the original method of his entrance into the jail.  As they were walking through the lobby, Brown noticed a camera (presumably a videocamera).  He covered his head with a "hoodie" (*i.e.*, a hooded sweatshirt) that he was wearing, in order to conceal his face.  Trooper Cinelli reached over and took the hoodie off Brown's head.  Brown believed he was being "set up" for the camera, and so he ducked down to shield himself.  Both Defendants Trooper Cinelli and Lt. Pete tried lifting him up so that he would be facing the camera.  Brown alleges that he intentionally made a statement for the videotape, saying: "you ain't gonna get your shine off me."  Id. at 2, ¶ 6.  He further claims that the Decalb deputy sheriffs were laughing at this situation.

Additionally, Brown alleges his "staged perp walk" was a privacy violation.  He also

---

[2]Brown does not provide any background details concerning the reason for his movement from Georgia to Massachusetts.  According to the official Massachusetts website of the Executive Office of Public Safety and Security, Brown had escaped from the custody of the Massachusetts Department of Correction ("DOC") on November 27, 2009, while serving a 10 year sentence for Home Invasion. He also had outstanding Indictments for Home Invasion and Rape.  He was on the DOC's "Most Wanted" list.  The website also indicted that Brown had been captured.  No other relevant information was listed.  See http://www.mass.gov/eopss/law-enforce-and-cj/prisons/doc-most-wanted/manson-brown-w85150.html.

claims the Defendants violated his Fourth Amendment rights because their actions constituted an unreasonable search and seizure. Finally, he alleges both Fourteenth Amendment due process violations and Eighth Amendment violations (alleging cruel and unusual punishment, because the Defendants' actions were devised to humiliate and inflict emotional distress on him). He seeks monetary damages from each of the three Defendants.

Along with the Complaint, Brown filed a Motion for Appointment of Counsel (Docket No. 2), an Application to Proceed in Court (Docket No. 3), and a Motion for Leave to Proceed *in forma pauperis* accompanied by his prison account statement (Docket Nos. 4 and 4-1).

On January 3, 2013, this action was reassigned from Judge Wolf to the undersigned.

### DISCUSSION

I.   The Application to Proceed in Court and the Motion for Leave to Proceed *In Forma Pauperis*

In his Application to Proceed in Court Without Prepayment of Fees and Costs, Brown requests that he be allowed to submit the money in his savings account ($237.97) and to pay the rest of the filing fee through his employment with the DOC. He claims his prison account is frozen due to his obligation to pay restitution. He seeks an Order directing the DOC to send the money that he earns to the Court until the filing fee is paid in full.

Brown also filed the standard short form Application to Proceed in District Court Without Prepayment of Fees or Costs (Docket No. 4); however, the form was not completed in its entirety.

A review of Brown's prison account statement reveals that he lacks sufficient funds to pay the $350.00 filing fee for this action, and thus would financially qualify to proceed *in forma pauperis*. Nevertheless, his application is deficient because Brown did not complete the

financial affidavit nor did he sign the form under the penalties of perjury or aver he believes he is entitled to redress.

>Section 1915(a)(1) provides:
>
>Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

Id.

The affidavit requirement contained in the *in forma pauperis* statute serves a deterrent function. Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 205 (1993). In Rowland, the United States Supreme Court stated: "[o]ne who makes this affidavit exposes himself 'to the pains of perjury in a case of bad faith.' ... This constitutes a sanction important in protection of the public against a false or fraudulent invocation of the statute's benefits." Id. at 205 (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 338, (1948) quoting Pothier v. Rodman, 261 U.S. 307, 309 (1923)).  The perjury sanction is an important requirement in protecting the public against misuse of public funds by a litigant who has sufficient funds of his or her own, and against the filing of "frivolous or malicious" lawsuits funded by the public. Rowland, 506 U.S. at 205.

Accordingly, in light of this deficiency, this Court will DENY Brown's Motion for Leave to Proceed *in forma pauperis* (Docket No. 4). The Court will also DENY Brown's Application to Proceed in Court (Docket No. 3) because this Court has no authority to collect the filing fee in the manner suggested by Brown. Rather, under the *in forma pauperis* statute, 28 U.S.C.

§ 1915(b), the Court is required to assess an initial partial filing fee based on the formula contained therein (*i.e.*, comparing the average monthly balance with the average monthly deposits for the six-month period preceding the filing of the Complaint, then assessing 20% of the greater of the two amounts).[3] After payment of the initial filing fee, Brown then would be required to make monthly payments of 20% of the preceding month's income credited to his account. Additionally, the prison would be obligated to forward payments to the Court each time the amount in Brown's account exceeded $10.00, until the $350.00 filing fee was paid in full. See 28 U.S.C. § 1915(b)(2). In light of this, Brown's offer to pay the balance of the filing fee directly from his prison wages is not a viable option.

This ruling is without prejudice to Brown renewing a Motion for Leave to Proceed *in forma pauperis* within 21 days of the date of this Memorandum and Order, provided he file a completed form signed under the pains and penalties of perjury. The Clerk shall send Brown the standard form in blank along with a copy of this Memorandum and Order.

II.     Screening of the Complaint

Notwithstanding that Brown is not proceeding *in forma pauperis* at this time (and thus a preliminary screening under 28 U.S.C. § 1915(e) is not authorized), this Court still has statutory authority to preliminary screen his Complaint pursuant to 28 U.S.C. § 1915A. Section 1915A authorizes review of prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action

---

[3]The initial partial assessment would be made notwithstanding that collection of the assessed fee might be problematic, as Brown may not have sufficient funds in his personal prison account to satisfy the initial partial assessment. The *in forma pauperis* statute provides for assessment, with collection to be made "when funds exist." 28 U.S.C. § 1915(b)(1).

regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

III.   Rule 8 Pleading Deficiencies on Claims Against Sheriff Thomas Brown; Failure to State a Claim Upon Which Relief May Be Granted

Upon preliminary screening of the Complaint, this Court would permit this action to proceed with respect to Brown's claims against Defendants Pete and Cinelli once the filing fee issue has been resolved, as Brown has stated claims sufficient to pass muster.  Therefore, upon resolution of the filing fee issue, an Order shall enter directing the issuance of summonses as to these two Defendants.  Additionally, if Brown is permitted to proceed *in forma pauperis*, the Court will issue an Order directing the United States Marshal Service to effect service of process as directed by Brown, and advance the costs of service.

With respect to Defendant Dekalb County Sheriff Thomas Brown, however, Brown fails to set forth a claim in accordance with Rule 8 of the Federal Rules of Civil Procedure.  The Complaint focuses on the alleged wrongdoings of defendants Pete and Cinelli, but fails, in the body of the Complaint, to set forth any claims against Sheriff Thomas Brown.  Rather, Plaintiff simply asserts an action by one of Sheriff Brown's deputy sheriffs, stating: "one of the sheriff deputy (john doe) pull out his cell-phone to take a picture of the plaintiff with the Mass Apprehension Unit, Tpr. Cinelli for personal glory."  Compl. at 2, ¶ 8.  He makes no mention of any actions taken by directly by Sheriff Thomas Brown.

To the extent that Brown is suing Sheriff Brown for the wrongdoings of his employees, his civil rights claims under 42 U.S.C. § 1983 (the vehicle for bringing claims for constitutional claims by state actors) are not cognizable because Sheriff Brown is not liable for the actions of

his employees under a theory of *respondeat superior*. "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)). "[In civil rights actions],'supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'" Velez-Rivera, 437 F.3d at 156 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). See Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights). See also Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (discussing test for liability of supervisory officials).

Here, no direct actions of Sheriff Brown are alleged, and therefore the claims against Sheriff Brown are subject to dismissal.

IV. <u>Order to Show Cause</u>

In light of the above, the Court will direct that, within 42 days of the date of this Memorandum and Order, Plaintiff shall demonstrate good cause in writing why his claims against Sheriff Brown should not be dismissed. Failure to do so will result in a dismissal of all claims against Sheriff Brown.

V. <u>The Motion for Appointment of Counsel</u>

Under 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any

person unable to afford counsel." 28 U.S.C. § 1915(e)(1).[4] However, a civil plaintiff lacks a constitutional right to free counsel. DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991). In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on the party's due process rights. Id. To determine whether exceptional circumstances sufficient to warrant the appointment of counsel are present in a case, the Court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself. Id. at 24. See Cookish v. Cunningham, 787 F.2d 1, 3 (1st Cir. 1986); Bemis v. Kelley, 857 F.2d 14, 16 (1st Cir. 1988).

At this juncture, the Court will credit, for purposes of Brown's motion, that he is indigent and cannot afford to retain his own counsel. Nevertheless, on this record alone, the court cannot find that exceptional circumstances exist warranting appointment of *pro bono* counsel at this juncture. Although Brown sets forth plausible claims for constitutional violations based on his allegations of a "staged perp walk," this Court cannot evaluate adequately the merits of Brown's claims without the benefit of a response from the Defendants. Moreover, while a pretrial prisoner possesses a privacy interest in not having his perp walk broadcasted to the public, that privacy interest may be outweighed by the legitimate governmental purposes, such as the accurate reporting of police activity. Caldarola v. County. of Westchester, 343 F.3d 570, 576-77 (2d Cir. 2003); see Lauro v. Charles, 219 F.3d 202, 213 (2d Cir. 2000)("The interests of the press, and of the public who might want to view perp walks, are far from negligible," but a

---

[4]In this District, there is no Plan authorizing the payment for counsel appointed for civil litigants such as the plaintiff. Any appointment of counsel would therefore be contingent upon the availability of *pro bono* counsel to accept voluntarily an appointment. *cf.* 18 U.S.C. § 3006A (providing for appointment of counsel in habeas petitions under 28 U.S.C. § 2241, § 2254 and motions under § 2255 and payment under the Criminal Justice Act).

wholly staged perp walk for the benefit of the media has been found to violate an arrestee's Fourth Amendment rights because no legitimate government purpose was served); Conradt v. NBC Universal, Inc., 536 F. Supp. 2d 380, 392 (S.D.N.Y. 2008).[5] Here, it is unclear why the Defendants Pete and Cinelli took Brown's picture with their cell phones, or why he was exposed to the videocamera.

In light of the above, this Court will DENY Brown's Motion for Appointment of Counsel (Docket No. 2) without prejudice to renew after the Defendants have filed a response to the Complaint, and upon good cause shown in light of the response.

## CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Application to Proceed in Court (Docket No. 3), and his Motion for Leave to Proceed *in forma pauperis* (Docket No. 4) are DENIED without prejudice;

2. Within 21 days of the date of this Memorandum and Order, Plaintiff shall file a renewed Motion for Leave to Proceed *in forma pauperis* signed under the penalties of perjury, or this action may be dismissed;

3. Within 35 days of the date of this Memorandum and Order, Plaintiff shall demonstrate good cause in writing why his claims against Sheriff Thomas Brown should not be dismissed;

4. Plaintiff's Motion for Appointment of Counsel (Docket No. 2) is DENIED without prejudice to renew after the Defendants have filed a response to the Complaint;

5. Upon resolution of the filing fee issue, an Order shall enter directing the issuance of summonses as to Defendants Lt. Joseph Pete of the Department of Correction Fugitive

---

[5] See also Demery v. Arpaio, 378 F.3d 1020, 1039 (9th Cir. 2004) ("Although a staged 'perp walk' has been termed an unreasonable seizure where it does not advance legitimate law enforcement purposes, it is not the case 'that all, or even most, perp walks are violations of the Fourth Amendment.'" citing Lauro, 219 F.3d at 213); Shaw v. Wendlend, 2012 WL 29357, *13 (S.D.N.Y. Jan. 6, 2012) (noting privacy interest in not having a perp walk broadcast to the public may be outweighed by legitimate governmental interests, citing Caldarola and Lauro, *supra*).

       Apprehension Unit in Milford, Massachusetts, and Trooper Curtis Cinelli of the Massachusetts State Police; and

6.     If Plaintiff is permitted to proceed *in forma pauperis*, an Order shall enter directing the United States Marshal Service to effect service of process, and to advance the costs of service.

SO ORDERED.

                              /s/ Joseph L. Tauro
                              JOSEPH L. TAURO
                              UNITED STATES DISTRICT JUDGE

DATED: January 8, 2013